# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____

Nº 10-CV-4631(JFB) (AKT)
_____

MARGARET R. LOUCKS,

Plaintiff,

VERSUS

BOARD OF EDUCATION OF MIDDLE COUNTY SCHOOL DISTRICT NO. 11,

Defendant.

_____

**MEMORANDUM AND ORDER**
July 17, 2012
_____

JOSEPH F. BIANCO, District Judge:

Plaintiff Margaret R. Loucks ("Loucks" or "plaintiff") commenced this action against the Board of Education of Middle County School District No. 11 (the "School District" or "defendant"), alleging discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* (the "ADEA"). Plaintiff, who was an employee of the School District from 1970-1996, alleges that the negotiated terms of the collective bargaining agreement between the School District and the Middle County Teachers Association ("MCTA") discriminate against her based on her age. In particular, plaintiff was eligible for an early retirement incentive package in 1993 at 55 years' old, but declined the incentive and continued to work until she retired in 1996. Plaintiff claims that the retirement incentive discriminates against her on account of her age because the District pays only 50% of her health insurance benefits, while it pays 100% for those employees who opted to take the incentive.

Currently before the Court are the parties' cross-motions for summary judgment. For the reasons set forth below, defendant's motion for summary judgment is granted and plaintiff's motion for summary judgment is denied. Specifically, the undisputed terms of the collective bargaining agreement's early retirement plan demonstrate that the plan offers an actual financial incentive to retire early, and that the incentive falls within the safe harbor provision of the ADEA, 29 U.S.C. § 623(f)(2)(B)(ii). The Court, pursuant to the safe harbor provision, holds that this retirement incentive is consistent with the relevant purpose of the ADEA and does not

arbitrarily discriminate on the basis of age. In fact, in *Auerbach v. Board of Education of the Harborfields Central School District of Greenlawn*, 136 F.3d 104, 107 (2d Cir. 1998), the Second Circuit upheld an early retirement incentive under the ADEA that is similar in all material respects to the retirement incentive at issue in this case. Plaintiff's counsel attempts to argue (in his papers and at oral argument) that *Auerbach* was based upon a factual misunderstanding and is erroneous. As a threshold matter, the Court does not agree that *Auerbach* was based upon an erroneous factual assumption. In any event, *Auerbach* is binding authority on this Court. In short, as in *Auerbach*, the retirement incentive at issue in this case constitutes a permissible early retirement incentive plan within the meaning of the safe harbor provision of the ADEA, and thus plaintiff's claim fails as a matter of law. Accordingly, summary judgment in defendant's favor on the only claim in this case is warranted.

I. BACKGROUND

A. Facts

The Court has taken the facts set forth below from the parties' depositions, affidavits, and exhibits, and from the parties' respective Rule 56.1 statements of facts. Upon consideration of a motion for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 (2d Cir. 2005). Unless otherwise noted, where a party's 56.1 statement is cited, that fact is undisputed or the opposing party has pointed to no evidence in the record to contradict it.[1]

On March 31, 1970, the School District hired plaintiff to work as a librarian and plaintiff's first day of employment was September 1, 1970. (Def.'s 56.1 ¶¶ 1, 2.) Plaintiff retired on July 1, 1996. (*Id.* ¶ 3.) Plaintiff was born on January 18, 1938, and her 55th birthday occurred on January 18, 1993. (*Id.* ¶¶ 13, 14.)

1. The Retirement Incentive and Terminal Allowance Provision

The School District entered into a collective bargaining agreement with the MCTA which covered the period of time from July 1, 1992 through June 30, 1996 (the "CBA"). (*Id.* ¶ 4.) The CBA contained a retirement inventive which provided, in part, that:

> 133. A. Teachers are eligible for a retirement incentive if they meet the following conditions:
>
> 1. The teacher has been in employ of the District for ten (10) years or more; and
>
> 2. The teacher retires on July 1st following his/her 55th birthday. However, teachers who turn age 55 between July 1st and August 31st may elect to retire the month they reach age 55; and
>
> 3. An irrevocable letter of retirement is given to the Superintendent no later than February 1st of the year of retirement.

(*Id.* ¶¶ 5, 6.[2]) There is a footnote to Section 133.A(1) that provides that:

---

[1] In addition, although the parties' Rule 56.1 statements contain specific citations to the record to support their statements, the Court has cited to the Rule 56.1 statements, rather than the underlying citation to the record, when utilizing the 56.1 statements for purposes of this summary of facts.

[2] Plaintiff denies the statements in defendant's 56.1 paragraphs 5-6, 8-12, 15, 17, 20-24 and 33 "to the

2

Teachers hired prior to July 1, 1989 who reach age 55 but do not have ten (10) years of service in the District but have twenty (20) years or more of service in the NYSTRS and meet the requirements of (2) and (3) below, shall be eligible for the benefits provided in subsections (2)-(5).

(*Id.* ¶ 7.) There also is a footnote to Section 133.A(2) that provides:

The provisions of this incentive shall be available to teachers over age 55 who do not have at least twenty (20) years of service in the year they reach age 55 provided they retire on the July 1st following the year in which they first have twenty years of service.

(*Id.* ¶ 8.) The retirement incentive offered the retiree a $15,000.00 lump sum payment and one day's pay for each five days of accumulated unused sick/personal leave at the time of retirement up to a maximum of 46 days minus $100 for each day of sick/personal leave used above three days in the teacher's last year of employment. (*Id.* ¶ 9.) The retirement incentive provided that teachers who retired pursuant to its terms received a 100% contribution from the School District towards health insurance premiums. (*Id.* ¶ 10.) Teachers who did not avail themselves of the retirement incentive received a 40% contribution from the School District upon retirement. (*Id.* ¶ 11.[3])

Plaintiff had the option of retiring under the terms of the retirement incentive in 1993 when she was 55 years old. (Def.'s 56.1 ¶¶ 12.[4]) Pursuant to the terms of the CBA, plaintiff qualified to retire under the retirement incentive on July 1, 1993. (Def.'s 56.1 ¶ 15.)

Paragraph 134 of the CBA, the Terminal Allowance Provision, provides that:

Terminal Allowance

Members of the unit shall be entitled to terminal allowance upon their leaving the District computed at the rate of one (1) day's pay (1/200th) for each five (5) days of accumulated unused sick/personal leave provided they meet the following conditions:

A. The teacher had not received or will not receive a retirement incentive;

B. The teacher has been in the employ of the District for ten (10) years or more;

C. Written notice is given to the Superintendent by February 15th or in the case of excessed teachers, thirty (30) days following their notice of intent to excess;

---

extent that an admission might be interpreted as a concession that paragraph 133 of the Collective Bargaining Agreement is a 'voluntary early retirement incentive plan' under 29 U.S.C. § 623(f)(2)." (Pl.'s Opp. 56.1 ¶¶ 5-6, 5-6, 8-12, 15, 17, 20-24, 33.) However, it is undisputed that the above-referenced language of the CBA is accurate.

[3] Plaintiff again, while not disputing the language of the CBA, disputes its legal interpretation. (Pl.'s Opp. 56.1 ¶¶ 10-11.)
[4] Plaintiff acknowledges that she had the option of retiring under the retirement incentive, but contends that she could not have retired pursuant to the age restrictions contained in paragraph 133 of the CBA without suffering other disadvantages. (Pl.'s Opp. 56.1 ¶ 12.)

3

D. Payments shall be made no later than the second payroll period in July following their leaving the District.

(*Id*. ¶ 16.)

### 2. Plaintiff's Retirement

Although plaintiff was eligible to retire under the terms of the retirement incentive on July 1, 1993, plaintiff retired three years later on July 1, 1996 when she was 58 years old. (*Id*. ¶¶ 15, 17, 18, 19.) Plaintiff was aware: (1) of the terms of the retirement incentive when she was 54 years old, and possibly prior to that time; (2) that, under the terms of the retirement incentive, employees who retired at age 55 were entitled to a lump sum payment; and (3) that, under the terms of the retirement incentive, employees who retired at age 55 were entitled to receive 100% of their health benefits paid during the periods of their retirement. (*Id*. ¶¶ 20, 21, 22.) Plaintiff was aware of approximately ten (10) employees who retired before she did pursuant to the terms of the retirement incentive. (*Id*. 56.1 ¶ 23.[5]) Defendant asserts that plaintiff expressly rejected the Retirement Incentive when she was eligible for it, while plaintiff asserts that Loucks did not expressly reject it but admits that she continued her employment with defendant when and after she reached the age of 55. (*Id*. 56.1 ¶ 24; Pl.'s Opp. 56.1 ¶ 24.)

Plaintiff continued working until she was 58 years old so that she could retire with a higher pension than she would have received if she had retired pursuant to the terms of the retirement incentive because she "wanted to build [up] her final salary." (Def.'s 56.1 ¶¶ 25, 26.) Accordingly, plaintiff received a higher monthly pension than she would have received if she retired at age 55. (*Id*. 56.1 ¶ 27.) The value of a retiree's pension is calculated by averaging the three highest years of that retiree's salary, and plaintiff earned her three highest annual salaries when she was 56, 57, and 58 years old. (*Id*. ¶¶ 28, 29.)

Plaintiff retired pursuant to the Terminal Allowance provision. (*Id*. ¶ 31.) According to defendant, the Terminal Allowance provides the retiree with a 50% contribution towards health care premiums. (*Id*. 56.1 ¶ 32.[6]) Plaintiff was aware of the benefits afforded to her pursuant to the Terminal Allowance provision when she elected not to retire pursuant to the terms of the retirement incentive. (*Id*. ¶ 33.)

### B. Procedural History

Defendant filed its motion for summary judgment on December 8, 2011. Plaintiff filed her opposition to defendant's motion for summary judgment and cross-motion for summary judgment on January 9, 2012. Defendant filed a reply to its motion for summary judgment and opposition to plaintiff's cross-motion for summary judgment on January 27, 2012. Plaintiff filed a reply on her cross-motion on February 9, 2012. Oral argument was held on April 3, 2012. The Court has fully considered the arguments of the parties.

---

[5] Plaintiff does not dispute this fact, but objects to this fact as irrelevant. (Pl.'s Opp. 56.1 ¶ 23.)

[6] Plaintiff denies this statement "[b]ecause the evidence cited does not say what the defendant claims it says" but "admit[s] that, at the time that the plaintiff retired from the employ of the defendant, defendant maintained a policy under which it paid 50 percent of the costs of the health insurance benefits for its retired employees if the employees retired from the employ of the defendant after the time they reached the age of 55 years, with certain limited exceptions." (Pl.'s Opp. 56.1 ¶ 32.)

3. STANDARD OF REVIEW

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(a), a court may only grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that he or she is entitled to summary judgment. *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (emphasis in original)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50, 106 S. Ct. 2505 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48, 106 S. Ct. 2505 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

The Second Circuit has provided additional guidance regarding summary judgment motions in discrimination cases:

> We have sometimes noted that an extra measure of caution is merited in affirming summary judgment in a discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions. *See, e.g.*, *Gallo v.*

5

*Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994). Nonetheless, "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997); *see also Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

*Schiano v. Quality Payroll Sys.*, 445 F.3d 597, 603 (2d Cir. 2006) (quoting *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 69 (2d Cir. 2001)).

### III. DISCUSSION

Defendant argues that summary judgment should be granted because the retirement incentive is valid and does not violate the ADEA. For the reasons set forth below, the Court finds that the retirement incentive does not violate the ADEA. Accordingly, defendant's motion for summary judgment is granted and plaintiff's cross-motion for summary judgment is denied.[7]

### A. Applicable Law

#### 1. The Burden Shifting Analysis

The ADEA states that it is "unlawful for an employer . . . to discharge an individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1) (2006). When a plaintiff presents no direct evidence of discriminatory treatment based on his age, the Court reviews his ADEA claim under the three-step, burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802-05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See D'Cunha v. Genovese/Eckerd Corp.*, 479 F.3d 193, 194-95 (2d Cir. 2007) (per curiam); *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005).

To establish a prima facie case of age discrimination, a plaintiff must demonstrate that: "(i) at the relevant time the plaintiff was a member of the protected class; (ii) the plaintiff was qualified for the job; (iii) the plaintiff suffered an adverse employment action; and (iv) the adverse employment

---

[7] As a threshold matter, defendant argues that plaintiff lacks standing to bring this action because plaintiff was not denied any benefit on account of her age. (Def.'s Br. at 16-17.) Plaintiff argues that she has suffered an injury in that she has had to pay for health insurance coverage because she retired after the age of 55 while employees who retire at 55 under the same policy do not pay for health insurance benefits. (Pl.'s Opp. Br. at 15-16.) "It is axiomatic that '[t]here are three Article III standing requirements: (1) the plaintiff must have suffered an injury-in-fact; (2) there must be a causal connection between the injury and the conduct at issue; and (3) the injury must be likely to be redressed by a favorable decision.'" *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 489 (2d Cir. 2009) (quoting *Kendall v. Employees Ret. Plan of Avon Prods.*, 561 F.3d 112, 118 (2d Cir. 2009)); *see also Lamar Adver. of Penn, LLC v. Town of Orchard Park, N.Y.*, 356 F.3d 365, 373 (2d Cir. 2004) ("To meet Article III's constitutional requirements for standing, a plaintiff must allege an actual or threatened injury to himself that is fairly traceable to the allegedly unlawful conduct of the defendant." (citations and quotation marks omitted)). Here, the Court finds that plaintiff has sufficiently alleged that she suffered an injury that is fairly traceable to the CBA's retirement incentive. Thus, plaintiff has standing to bring this action. However, as discussed *infra*, the Court finds that the retirement incentive in this case does not violate the ADEA as a matter of law because the terms of the CBA constitute an early retirement incentive that is permissible under the ADEA.

action occurred under circumstances giving rise to an inference of discrimination, such as the fact that the plaintiff was replaced by someone 'substantially younger.'" *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir. 2001) (quoting *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996)). The Second Circuit has characterized the evidence necessary for the plaintiff to satisfy this initial burden as "minimal" and "de minimis." *See Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001).

Once a plaintiff establishes a prima facie case of discrimination, "the burden of production [shifts] to the defendant, who must proffer a 'legitimate, non-discriminatory reason' for the challenged employment action." *Woodman*, 411 F.3d at 76 (citing *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 91 (2d Cir. 2001)). If the defendant articulates a legitimate, non-discriminatory reason, plaintiff must then prove that defendant's articulated reasons are pretextual. *See id.* at 76. "In short, the ultimate burden rests with the plaintiff to offer evidence 'sufficient to support a reasonable inference that prohibited [age] discrimination occurred.'" *Id.* (citing *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 156 (2d Cir. 2000)).

To meet this burden, the plaintiff may rely on evidence presented to establish his prima facie case as well as additional evidence. Such additional evidence may include direct or circumstantial evidence of discrimination. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99-101, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003). However, meeting "*McDonnell Douglas*'s minimal requirements of a prima facie case plus evidence from which a factfinder could find that the employer's explanation was false" does not automatically and necessarily require the denial of summary judgment and the submission of the case to the jury. *James*, 233 F.3d at 157. Instead, the key is whether there is sufficient evidence in the record from which a reasonable trier of fact could find in favor of plaintiff on the ultimate issue, that is, whether the record contains sufficient evidence to support an inference of discrimination. *See id.*; *Connell v. Consol. Edison Co. of N.Y., Inc.*, 109 F. Supp. 2d 202, 207-08 (S.D.N.Y. 2000).

As the Second Circuit observed in *James*, "the way to tell whether a plaintiff's case is sufficient to sustain a verdict is to analyze the particular evidence to determine whether it reasonably supports an inference of the facts plaintiff must prove-particularly discrimination." 233 F.3d at 157; *see also Norton v. Sam's Club*, 145 F.3d 114, 118 (2d Cir. 1998) ("The thick accretion of cases interpreting this burden-shifting framework should not obscure the simple principle that lies at the core of anti-discrimination cases. In these, as in most other cases, the plaintiff has the ultimate burden of persuasion.").

2. The ADEA and Retirement Incentive Plans

Section 4(f)(2) of the ADEA specifically addresses the issue of employee benefit plans, including retirement incentive plans. 29 U.S.C. § 623(f)(2). That section provides, in pertinent part, that:

> It shall not be unlawful for an employer, employment agency, or labor organization – . . .
>
> (B) to observe the terms of a bona fide employee benefit plan –
>
> (i) where, for each benefit or benefit package, the actual amount of

payment made or cost incurred on behalf of an older worker is no less than that made or incurred on behalf of a younger worker, . . . or

(ii) that is a voluntary early retirement incentive plan consistent with the relevant purpose or purposes of this chapter.

29 U.S.C. § 623(f)(2). "Whether such a plan furthers the purposes of the Act is ultimately an inquiry to be made on a case-by-case basis, taking into account all of the relevant facts and circumstances." *Auerbach v. Bd. Of Educ. of the Harborfields Cent. Sch. Dist. of Greenland*, 136 F.3d 104, 112 (2d Cir. 1998) (internal citations omitted). In examining the validity of a plan, the Second Circuit has instructed that the court "[s]hould consider whether the plan (1) is truly voluntary, (2) is made available for a reasonable period of time, and (3) does not arbitrarily discriminate on the basis of age." *Id*. at 112-13.

### B. Application

In the case at bar, plaintiff concedes that the terms of the CBA's retirement incentive are voluntary and were made available for a reasonable period of time. (Pl.'s Opp. Br. at 9.) Plaintiff's sole argument is that the retirement incentive arbitrarily discriminates based on age. (*Id*.) However, the Court disagrees and concludes that, as a matter of law, the retirement incentive complies with the ADEA. In fact, as discussed below, the terms of eligibility in this case are similar in all material respects to the eligibility requirements in *Auerbach*, which was found to be permissible by the Second Circuit under the ADEA. Accordingly, summary judgment is granted in favor of defendant and against plaintiff.

In *Auerbach*, the plan in question included the following eligibility requirements:

1. A teacher must retire at the conclusion of the school year (July 1-September 1), he/she first reaches the age of fifty five years and completes a total of at least twenty (20) years of credited service under the New York State Teachers' Retirement System [the TRS], or at the conclusion of the school year in which the teacher who is age fifty-five (55) years or more, has first completed twenty (20) years of credited service under the New York State Teachers' Retirement Sys-tem.

2. A teacher must have completed ten (10) consecutive full years of service in Harborfields Central School District.

3. A teacher must submit to the District no later than January 1, of the final full year of service, a letter of resignation for retirement purposes. This notice provision may be waived for employees retiring for medical reasons, or for any other reason(s), upon the recommendation of the Superintendent of Schools and approval by the Board of Education.

136 F.3d, 107-08. In *Auerbach*, the Court stated that "[b]oth Houses [of Congress] expressly endorsed plans containing a time-related window during which employees, upon attaining a specified age, are offered for a limited period of time a special

incentive to retire." *Id.* at 113 (citations omitted). Further, the Second Circuit held that the "retirement plan in the case at hand is precisely the sort of early retirement incentive plan that Congress aimed to preserve as lawful . . . . The plan grants *every* teacher the opportunity to receive a $12,500 cash payment and an accumulated sick leave payment once he or she reaches the age of 55 and has served the requisite number of years." *Id.* at 113 (emphasis in the original); *see also Fagan v. New York State Electric & Gas Corp.*, 186 F.3d 127, 133 (2d Cir. 1999) ("The existence of the early retirement plan is not evidence of age discrimination. The ADEA created a safe harbor for voluntary early retirement plans that are consistent with the relevant purpose or purposes of the ADEA, and the implementation of such a plan by an employer cannot serve as evidence of unlawful age discrimination." (quotations and citations omitted)).

The *Auerbach* Court also distinguished the case from a Seventh Circuit case, *Karlen v. City Colleges of Chicago*, 837 F.2d 314 (7th Cir. 1988), in which the court found that the retirement plan was discriminatory. In *Karlen*, the retirement plan offered retirees a lump sum payment based upon a variable percentage of the employee's accumulated sick pay based on the age of the employee at the time of retirement. *Auerbach*, 136 F.3d, at 114. The Second Circuit explained the difference between the two plans and stated that "[a]n early retirement incentive plan that withholds or reduces benefits to older retiree plan participants, while continuing to make them available to younger retiree plan participants so as to encourage premature departure from employment by older works conflicts with the ADEA's stated purpose to prohibit arbitrary age discrimination in employment." *Id.* In contrast, the Second Circuit stated that the plan in *Auerbach* "[b]y offering the same incentive (subject to variations in accumulated sick days) to all plan participants who reach the age of 55, it treats those participants equally, regardless of the actual age at which they retire." *Id.*

The plan in this case is very similar to the plan in *Auerbach*. As stated *supra*, the CBA contained a retirement inventive which provided, in part, that:

> 133. A. Teachers are eligible for a retirement incentive if they meet the following conditions:
>
> 1. The teacher has been in employ of the District for ten (10) years or more; and
>
> 2. The teacher retires on July 1st following his/her 55th birthday. However, teachers who turn age 55 between July 1st and August 31st may elect to retire the month they reach age 55; and
>
> 3. An irrevocable letter of retirement is given to the Superintendent no later than February 1st of the year of retirement.

(Def.'s 56.1 ¶¶ 5, 6.) Thus, like in *Auerbach*, the retirement incentive in this case provides that each participant who reaches the age of 55, after completing the requisite years of service, receives the same benefits. Therefore, the plan in this case, like the one in *Auerbach*, does not discriminate based on age.[8]

---

[8] Unlike the retirement incentive in *Auerbach*, the plan in this case included two footnotes extending eligibility to persons who: (1) were hired prior to July 1, 1989 who reached the age of 55 but did not have ten years of service in the District but twenty years of service in the NYSTRA, who also met other eligibility requirements; and (2) were over the age of 55 who did not have at least twenty years of service in the year they reached 55 provided they retire on

Plaintiff attempts to argue that, because the plan expressly states that eligibility for the benefits is based on an employee's age, and thus relies upon age as a trigger, the provision is a *prima facia* violation of the ADEA. (Pl.'s Opp. Br. at 5.) In support of this argument, plaintiff avers that: (1) paragraph 133 may not provide a retirement incentive; (2) the plan provides some participants greater incentive to retire; (3) the plan imposes a penalty on employees reaching the age of 55 years; and (4) the plan is a long-term policy designed to discourage the continued employment of older teachers. (*Id*. at 5-13.) These arguments are without merit.

First, plaintiff's arguments rest on the fact that the plan in question bases eligibility on attaining the age of 55. However, as discussed *supra*, *Auerbach* has specifically provided that plans, such as the one in this case, that base eligibility on attaining the age 55 and provide the same benefit to employees that opt to utilize the retirement incentive, do not violate the ADEA. Thus, the plan does not violate the ADEA.[9]

Plaintiff also attempts to argue that there was a factual misunderstanding in *Auerbach*. (*Id*. at 9.) Plaintiff's brief states that: "[i]n *Auerbach*, the Court of Appeals believed that the plan qualification was that a teacher had to retire in the first year of retirement eligibility, even though it was aware that those teachers were part of NYSTRS. . . . In *Abrahamson* [*v. Board of Education, Wappinger Falls*, 374 F.3d 66 (2d Cir. 2004)], the court acknowledges that eligibility for a pension under NYSTRS is something other than a minimum age of 55 years and a minimum years and a minimum period of New York State service of 20 years. . . . The Court just assumes that the facts in *Auerbach* were different." (*Id*. at 9-10.) This Court disagrees and does not believe there is any mistaken factual understanding in *Auerbach*. However, even if there was a factual misunderstanding in *Auerbach*, there is no indication that the alleged factual misunderstanding would alter the legal principles set forth in the binding Second Circuit opinion as it applies to this case. Accordingly, plaintiff's argument is without merit.

Additionally, to the extent that plaintiff argues that the plan in question does not provide a retirement incentive, that argument is simply wrong. The Middle County retirement incentive offered a clear financial incentive to retire – namely, retirees were offered a $15,000 lump sum payment and 100% payment of their health insurance benefits upon retirement. Thus, the instant case is clearly distinguishable from *Abrahamson* where the incentive offered teachers $7,000 per year for three years *if they continued to work instead of retiring*, and thus was not a retirement incentive.[10] 374 F.3d at 75-76.

Plaintiff also argues that "[i]f the impact of early retirement on the plaintiff's pension is taken into account, the plan at issue in this matter is not an early retirement incentive plan because it fails to make retirement the

---

the July 1st following the year in which they first have twenty years of service. (Def.'s 56.1 ¶¶ 7, 8.) However, the extension of eligibility to these employees does not alter the Court's analysis. The plan still provides all employees with the same benefits once they have become eligible to retire pursuant to the terms of the retirement incentive.

[9] To the extent that plaintiff is arguing that the plan does not provide the same benefit to each employee who opts to utilize the retirement incentive, that argument is without merit. As discussed *supra*, the same benefit is provided to each employee who opts to take the retirement incentive. (*See* Def.'s 56.1 ¶¶ 9-10.)

[10] At oral argument, plaintiff's counsel conceded that the plan at issue here provides "some incentive" to retire, but then argued that it was "not enough."

more attractive option. The facts show that, for plaintiff, in 1993, the plan failed to make retirement the more attractive option." (*Id.* at 6.) However, there is no legal authority for the position that a court, once it determines under *Abrahamson* that the plan provides a retirement incentive, needs to also determine how much of an incentive an employee is to receive in order for a plan to qualify under the safe harbor provision of the ADEA. As defendant correctly explains,

> Plaintiff's argument that these benefits should be weighed against the potential increase in pension benefits through continued employment in order to determine whether it is an "incentive" ignores the reality of teacher employment. Nearly every teacher could continue working long enough to make the increased benefits to their pension outweigh the benefit of any retirement incentive. Plaintiff's logic would effectively eliminate the safe harbor mandate for permissive retirement incentives set forth in § 623(f)(2)(B)(ii), endorsed by both Houses of Congress. Auerbach, 136 F.3d at 113.
>
> Moreover, plaintiff ignores the fact that teachers, such as the plaintiff, who opt not to take the retirement incentive, have to actually work for the increased pension benefits. Her attempted comparative analysis of the "incentive" issue leaves out the fact that the increased pension is a product of the employee's additional labor and thus cannot be compared dollar-for-dollar with the retirement incentive. It is not surprising that plaintiff cannot cite a single case to support the proposition that a retirement incentive is not a retirement incentive if an employee could increase her pension benefits by continuing to work.

(Def.'s Reply Br. at 3.) In short, this argument by plaintiff is also unavailing.[11]

Accordingly, based upon the uncontroverted facts regarding the plan in this case, the Court concludes that the early retirement plan falls within the safe harbor provision of Section 623(f)(2)(B)(ii) and does not violate the ADEA. Thus, summary judgment is properly granted in favor of defendant and against plaintiff.

### IV. CONCLUSION

For the reasons set forth herein, plaintiff's motion for summary judgment is denied and defendant's motion for summary judgment is granted in its entirety, and the complaint is dismissed. The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: July 17, 2012
Central Islip, NY

\* \* \*

Plaintiff is represented by David M. Lira, Esq., 595 Stewart Avenue, Suite 510,

---

[11] Defendant also argues that plaintiff's claim is untimely and barred by the doctrine of laches. However, because, as discussed *surpa*, the Court has determined that the claim fails on the merits, the Court need not address defendant's additional arguments.

Garden City, NY 11530. Defendant is represented by Steven C. Stern, Esq., of the Law Offices of Sokoloff Stern LLP, 355 Post Avenue, Suite 201, Westbury, New York 11590.